Stephen F. Roth
Keir J. LoIacono
LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:     908.654.5000
Fax:    908.654.7866

*Attorneys for Plaintiffs Moose Mountain*
*Toymakers Ltd. and Moose Mountain Marketing, Inc.*

**Document Filed Electronically**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOOSE MOUNTAIN TOYMAKERS LTD. and MOOSE MOUNTAIN MARKETING, INC. | : : : : |
| Plaintiffs, | : : |
| v. | : : |
| MAJIK LTD., LLC and EAST POINT SPORTS, | : : : |
| Defendants. | : : x |

Civil Action No.

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiffs Moose Mountain Toymakers Ltd. a Hong Kong corporation located at Unit 704-6, 7-F, Energy Plaza, 92 Granville Road, Tsimshatsui East, Kowloon, Hong Kong, and Moose Mountain Marketing, Inc., a New Jersey corporation, having its principal place of business at 8 Wood Hollow Road, Suite 302, Parsippany, New Jersey 07054, for their complaint against defendants Majik Ltd., LLC having its principal place of business at 628 Route 10 W#5, Whippany, New Jersey 07981-1522 and East Point

Sports having its principal place of business at 628 Route 10 W#5, Whippany, New Jersey 07981-1522 (collectively "Defendants") allege as follows:

## NATURE OF THE SUIT

This is an action for patent infringement under United States law, unfair competition under New Jersey law, unfair competition under common law, tortious interference and unjust enrichment arising from Defendants' improper taking and improper use of Moose Mountains' rights to the design and implementation of a bowling game.  Such acts have injured the Plaintiffs, have damaged their business, and unless restrained will continue to cause such damage.

## PARTIES

1.     Plaintiff Moose Mountain Toymakers Ltd. is a Hong Kong corporation having its principle place of business at Unit 704-6, 7-F, Energy Plaza, 92 Granville Road, Tsimshatsui East, Kowloon, Hong Kong.  Plaintiff Moose Mountain Marketing, Inc. is a New Jersey Corporation having its principal place of business at 8 Wood Hollow Road, Suite 302, Parsippany, New Jersey 07054.  Moose Mountain Toymakers Ltd. and Moose Mountain Marketing, Inc. are hereinafter referred to as "Moose Mountain."

2.     Upon information and belief, defendant Majik Ltd., LLC ("Majik") is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business at 628 Route 10 W#5, Whippany, New Jersey 07981-1522.

3.     Upon information and belief, defendant East Point Sports ("East Point Sports") is a corporation organized and existing under the laws of the State of New

Jersey, having its principal place of business at 628 Route 10 W#5, Whippany, New Jersey 07981-1522.

## JURISDICTION AND VENUE

4. This is a civil action arising under the patent laws of the United States, Title 35 of the United States Code. This Court has original and exclusive jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has jurisdiction over Moose Mountain's claims arising under state law pursuant to 28 U.S.C. § 1338(b), as well as pendent jurisdiction over those claims.

6. This Court has supplemental jurisdiction over Moose Mountain's state law claims set forth in this complaint pursuant to 28 U.S.C. § 1367(a).

7. Defendants do business in this district, have substantial contacts with this district, direct their business to this district, and otherwise have sufficient contacts with this district to confer jurisdiction of this Court.

8. Defendants are now, and at all times relevant to this complaint have been, subject to personal jurisdiction in the State of New Jersey and the District of New Jersey.

9. Venue is proper in this district under 28 U.S.C. § 1391, as Defendants do business in this district, and upon information and belief, have committed acts and sold products in this district that are the subject of this suit.

## BACKGROUND

10. Moose Mountain designs, manufactures and distributes toys and related items.

11. Moose Mountain owns numerous intellectual properties, including patents, trademarks, and copyrights covering their toys and other products.

12. On October 12, 2004, the United States Patent and Trademark Office issued United States Design Patent No. D497,187, entitled "Bowling Game" (hereinafter "the '187 Patent").

13. The '187 Patent covers the ornamental appearance of a bowling game. A representative drawing from the '187 Patent is displayed below:



14. On May 2, 2006, the United States Patent and Trademark Office issued United States Design Patent No. D520,067 entitled "Bowling Game" (hereinafter "the '067 Patent").

15. The '067 Patent covers the ornamental appearance of a bowling game. A representative drawing from the '067 Patent is displayed below:



16. Moose Mountain Toymakers Ltd. is the owner of the entire right, title, and interest in and to both the '187 Patent and the '067 Patent.

17. Moose Mountain Marketing, Inc. is the exclusive licensee of both the '187 Patent and the '067 Patent.

18. Moose Mountain manufactures and sells the Arcade Alley® Bowlercade® game, which is protected by both the '187 Patent and the '067 Patent.

19. The Arcade Alley® Bowlercade® games sold are marked with the '187 and '067 Patents, and therefore comply with 35 U.S.C. § 287.

20. Defendants had notice of both the '187 Patent and '067 Patent, and upon information and belief had actual knowledge of the '187 and '067 Patents.

21. Defendants knowingly misappropriated key distinguishing design features of the Arcade Alley® Bowlercade®. Upon information and belief, Defendants have misappropriated these key design features to make the Majik Bowl game that imitates the Arcade Alley® Bowlercade®.

22. The Majik Bowl game is depicted in the illustration below.



23. In the images below, the figure from the '067 Patent on the left, and the figure from the '187 Patent in the middle, in comparison with the Majik Bowl game depicted on the right, demonstrates that the Majik Bowl game infringes the designs claimed in the '067 and '187 Patents.



24. Defendants built and sold the Majik Bowl game without authorization, consent or permission from Moose Mountain

## FIRST CLAIM FOR RELIEF
## Patent Infringement Of United States Patent No. D497,187

25. All of the foregoing allegations are incorporated by reference as though fully set forth at length herein.

26. Defendants are manufacturing, importing, advertising, marketing, selling, and/or offering for sale the Majik Bowl game that infringes the '187 Patent.

27. Defendants' manufacturing, importing, advertising, marketing, selling, and/or offering for sale bowling games that infringe the '187 Patent is a violation of Moose Mountain's statutory rights under the United States Patent Statute (35 U.S.C. §§ 1 *et seq*.).

28. Upon information and belief, Defendants were aware of Moose Mountain's rights to the '187 Patent, which placed upon Defendants a duty of reasonable and due care to determine that they did not infringe Moose Mountain's rights, which duty it did not satisfy.

29. Defendants have been and are continuing to infringe the '187 Patent by manufacturing, importing, advertising, marketing, selling, and/or offering for sale the Majik Bowl game that infringes the claim of the '187 Patent, directly or through the use of intermediaries, within this judicial district and elsewhere within the United States, its territories and possessions, or by inducing others to do same, or by contributing to others' infringement of the '187 Patent.

30. The aforesaid acts of Defendants were committed willfully, knowingly, and in conscious disregard of Moose Mountain's rights, and were with actual or constructive knowledge of the '187 Patent.

31. Such conduct is willful and deliberate, thus rendering this case exceptional under 35 U.S.C. § 285.

32. The aforesaid conduct of Defendants has caused Moose Mountain immediate, great and irreparable injury in their property and business, which will continue unless Defendants are restrained from their wrongful acts.

33. Moose Mountain has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Patent Infringement Of United States Patent No. D520,067

34. All of the foregoing allegations are incorporated by reference as though fully set forth at length herein.

35. Defendants are manufacturing, importing, advertising, marketing, selling, and/or offering for sale the Majik Bowl game that infringes the claim of the '067 Patent.

36. Defendants' manufacturing, importing, advertising, marketing, selling, and/or offering for sale bowling games that infringe the claims of the '067 Patent is a violation of Moose Mountain's statutory rights under the United States Patent Statute (35 U.S.C. §§ 1 *et seq.*).

37. Upon information and belief, Defendants were aware of Moose Mountain's rights to the '067 Patent, which placed upon Defendants a duty of reasonable and due care

to determine that they did not infringe Moose Mountain's rights, which duty it did not satisfy.

38. Defendants have been and are continuing to infringe the '067 Patent by manufacturing, importing, advertising, marketing, selling, and/or offering for sale the Majik Bowl game that infringes the claim of the '067 Patent, directly or through the use of intermediaries, within this judicial district and elsewhere within the United States, its territories and possessions, or by inducing others to do same, or by contributing to others' infringement of the '067 Patent.

39. The aforesaid acts of Defendants were committed willfully, knowingly, and in conscious disregard of Moose Mountain's rights, and were with actual or constructive knowledge of the '067 Patent.

40. Such conduct is willful and deliberate, thus rendering this case exceptional under 35 U.S.C. § 285.

41. The aforesaid conduct of Defendants has caused Moose Mountain immediate, great and irreparable injury in its property and business, which will continue unless Defendants are restrained from their wrongful acts.

42. Moose Mountain has no adequate remedy at law.

### Allegations Regarding Nonpatent Claims

43. Moose Mountain has established a business relationship with various retail establishments. As part of that relationship, Moose Mountain manufactured and sold the Arcade Alley® Bowlercade® to a specific retailer which Defendants are aware, but which shall be unnamed herein..

44. Defendants manufacture and sell toys and other items to various retail establishments.

45. Defendants compete with Moose Mountain in the retail toy and sporting goods market.

46. Upon information and belief Defendants became aware that Moose Mountain was negotiating with the specific retailer to sell the Arcade Alley® Bowlercade®, which is protected by the '067 and '187 Patents.

47. Upon information and belief, Defendants became aware of the fact that Moose Mountain and the specific retailer were negotiating the price of the bowling games.

48. Upon information and belief, Defendants interfered with the relationship between the specific retailer and Moose Mountain, and agreed to manufacture and supply retailers, including the specific retailer, with the Majik Bowl game, at a price that would undercut the price of the Arcade Alley® Bowlercade®.

49. The Majik Bowl game is an imitation of the Arcade Alley® Bowlercade®, and contains many of the same or similar features. Many of the imitated features can be seen in the image below.



50. The following game play features of the Majik Bowl game are the same or similar to those found in the Arcade Alley® Bowlercade® including, without limitation:

   a. A knock-down, customer assembled, on-floor bowling game system;

   b. The same procedures for "power on," "select player," "start game," and "game play";

   c. The LCD display shows scoring of each game and the final score, and plays audible sound effects;

   d. All pins automatically reset to vertical positions by an internal mechanism and an electrical motor;

   e. A red LED light at the control module indicates that the pins are being reset and not to roll the bowling ball toward the pin module when the LED light is illuminated;

   f. The bowling ball rolls up to a slant platform to hit the pins, which allows the bowling ball to gain potential energy for the ball return system;

   g. The bowling ball is stopped by netting at the back of the pin module, and it will fall to a rail located at the back of the pin module;

1256457_1.doc                                11

    h.    The bowling ball rolls down the back rail, and then along a ball return rail at the right of the lane, until it stops at the electronic control module in front of the player;

    i.    The electronic control module will announce strikes and spares; and has a "missed" ball functionality.

51.    The bowling pins of the Majik Bowl game have the same or similar shape, size, color, label, support ribs, wall thickness, weight and connection to the pin holder of the pin module as the Arcade Alley® Bowlercade®.

52.    The bowling balls of the Majik Bowl game are constructed of the same or similar materials, and have nearly the same matte finish, weight and diameter as the bowling balls of the Arcade Alley® Bowlercade®.

53.    The following pin module features of the Majik Bowl game are the same or similar to those found in the Arcade Alley® Bowlercade® including, without limitation:

    a.    The tops of the pins are installed with pin holders at the bottom of top portion of the pin module;

    b.    The pin holders of both the Majik Bowl game and Arcade Alley® Bowlercade® can be switched to be installed at each holder;

    c.    Plastic ribs are present on each roll of pin holders;

    d.    The mechanism and mounting for retracting the pins;

    e.    Mounting parts and connection of micro switch for detecting the hit of the pins; and

    f.    A logo plate stands on the slot at the front of the pin module.

54.    The following lane and ball return features of the Majik Bowl game are the same or similar to those found in the Arcade Alley® Bowlercade® including, without limitation:

a. Extruded plastic tubing for pressing the lane on the floor;

b. Velcro attaching the tube to each side of the lane;

c. Inserting tubing to injection molded connectors for extending the tubing;

d. Ball return tubing rail with two tubes and connectors; and

e. End connector with recess for the electronic scoring module to rest on it.

55. The following electronic control module features of the Majik Bowl game are the same or similar to those found in the Arcade Alley® Bowlercade® including, without limitation:

a. The modules have the identical number of control buttons on the panel and those buttons have the same features;

b. The graphical layout of the 2 players and scoring of the games on the LCD display;

c. The LCD size; and

d. The electronic control module size.

56. Defendants have also copied verbatim substantial portions of Defendants' instruction manual for the Arcade Alley® Bowlercade®.

57. Because of Moose Mountain's prior relationship and business dealings with the specific retailer, Defendants had a reasonable expectation that specific retailer would engage Moose Mountain to manufacture and provide the Arcade Alley® Bowlercade® to the specific retailer.

## THIRD CLAIM FOR RELIEF

### Tortious Interference With Prospective Economic Advantage

58. All of the foregoing allegations are incorporated by reference as though fully set forth at length herein.

59. Upon information and belief, Defendants were aware of Moose Mountain's prior relationship and business dealings with the specific retailer and wrongfully interfered with that relationship for their own benefit.

60. The aforementioned acts of Defendants constitute a tortious interference with prospective business or economic advantage, contrary to the common laws of the United States and the State of New Jersey.

61. The aforesaid conduct of Defendants was committed willfully, knowingly, maliciously, and in conscious disregard of Moose Mountain's rights.

62. The aforesaid acts by Defendants have caused immediate and irreparable injury to Moose Mountain's property and business.

63. Moose Mountain has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### State Unfair Competition In Violation of N.J.S.A. §§ 56:4-1 *et seq*.

64. All of the foregoing allegations are incorporated by reference as though fully set forth at length herein.

65. Defendants' manufacture and sales of the Majik Bowl game constitute acts of unfair competition in violation of N.J.S.A. §§ 56:4-1 *et seq*.

66. The aforesaid acts of Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of Moose Mountain's rights.

67. The aforesaid conduct of the Defendants has caused, and unless restrained by this Court will continue to cause, immediate, great, and irreparable harm to Moose Mountain's property and business.

68. Moose Mountain has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### Common-Law Unfair Competition

69. All of the foregoing allegations are incorporated by reference as though fully set forth at length herein.

70. Defendants' manufacture and sales of the Majik Bowl game constitute unfair competition and unfair business practices contrary to the common laws of the United States and the State of New Jersey.

71. The aforesaid acts of Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of Moose Mountain's rights.

72. The aforesaid conduct of the Defendants has caused, and unless restrained by this Court will continue to cause, immediate, great, and irreparable harm to Moose Mountain's property and business.

73. Moose Mountain has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

74. All of the foregoing allegations are incorporated by reference as though fully set forth at length herein.

75. Defendants have profited from Moose Mountain's ideas, goodwill, and proprietary designs without compensating Moose Mountain.

76. Defendants' retention of the benefits provided by Moose Mountain, without compensation to Moose Mountain, would be unjust.

77. The aforementioned acts of Defendants constitute unjust enrichment contrary to the common laws of the United States and the State of New Jersey.

78. The aforesaid conduct of Defendants was committed willfully, knowingly, maliciously, and in conscious disregard of Moose Mountain's rights.

79. The aforesaid acts by Defendants have caused immediate and irreparable injury to Moose Mountain's property and business.

80. Moose Mountain has no adequate remedy at law.

### REQUEST FOR RELIEF

WHEREFORE, Moose Mountain demand judgment against Defendants for:

A. a declaration that Defendants infringe the '067 and '187 Patents;

B. a declaration that Defendants infringement of the '067 and '187 Patents is willful;

C. a preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and those in active concert or

participation with them who receive actual notice of the order by personal service or otherwise, from manufacturing, advertising, marketing, selling, and/or offering for sale, products that infringe the subject matter of the '067 and '187 Patents;

  D. a monetary award to Moose Mountain in the amount of damages adequate to compensate it for Defendants' infringement of the '067 and '187 Patents;

  E. a monetary award to Moose Mountain for infringement of design patents under 35 U.S.C. § 289;

  F. a monetary award to Moose Mountain in the amount of their lost profits;

  G. an order requiring Defendants to pay Moose Mountain treble the amount of compensatory damages for patent infringement, pursuant to 35 U.S.C. § 284;

  H. an award to Moose Mountain of their reasonable attorney fees and the costs of this action, and an award to Moose Mountain of their attorney fees and costs available under 35 U.S.C. § 285;

  I. a monetary award to Moose Mountain in the amount of the actual damages sustained by them resulting from the unfair competition by Defendants;

  J. a monetary award of restitution to Moose Mountain in the amount that any and all of the Defendants have been unjustly enriched by the Defendants' actions;

  K. a disgorgement of the profits made by Defendants from the benefit provided by Moose Mountain;

  L. an award to Moose Mountain of compensatory, consequential, and/or incidental damages;

  M. an award to Moose Mountain of treble, exemplary, and/or punitive damages;

  N. prejudgment and postjudgment interest on the above monetary awards; and

  O. such other and further relief as this Court deems equitable and just.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Moose Mountain hereby demands a trial by a jury of twelve (12) on all issues so triable.

         Respectfully submitted,

         LERNER, DAVID, LITTENBERG,
          KRUMHOLZ & MENTLIK, LLP
         *Attorneys for Plaintiffs Moose Mountain*
         *Toymakers Ltd. and Moose Mountain*
         *Marketing, Inc.*

Dated: September 24, 2010    By: s/ Stephen F. Roth
            Stephen F. Roth
            Tel: 908.654.5000
            E-mail: sroth@ldlkm.com
                litigation@ldlkm.com

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

The undersigned hereby certifies, pursuant to Local Civil Rule 11.2, that with respect to the matter in controversy herein, neither Plaintiffs nor Plaintiffs' attorney is aware of any other action pending in any court, or of any pending arbitration or administrative proceeding, to which this matter is subject.

Dated:   September 24, 2010

LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
*Attorneys for Plaintiffs Moose Mountain*
*Toymakers Ltd. and Moose Mountain*
*Marketing, Inc.*


By:    s/ Stephen F. Roth
          Stephen F. Roth
          Tel: 908.654.5000
          E-mail:sroth@ldlkm.com
                    litigation@ldlkm.com