NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOOSE MOUNTAIN TOYMAKERS LTD. and MOOSE MOUNTAIN MARKETING, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | **OPINION** |
| v. | Civ. No. 10-4934 (DMC) (JAD) |
| MAJIK LTD., LLC and EAST POINT SPORTS, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the motion of Defendants East Point Sports, LLC and Majik, Ltd., LLC ("Defendants") for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). No oral argument was heard under Rule 78. For the reasons stated below, Defendants' motion is GRANTED.

I. **BACKGROUND**[1]

Plaintiffs Moose Mountain Toymakers Ltd. and Moose Mountain Marketing, Inc. ("Plaintiffs") design, manufacture and distribute the Arcade Alley® Bowlercade® game ("Bowlercade"), which is a toy bowling game. Bowlercade is protected by Patent No. D497,187 (the "'187 Patent") and Patent No. D520,067 (the "'067 Patent"), both of which cover the ornamental appearance of the game. Moose Mountain Toymakers Ltd. is the owner of the entire

---

[1] The facts in the Background section have been taken from the parties' submissions.

right, title and interest in the '187 and '067 Patents. Moose Mountain Marketing, Inc. is the exclusive licensee of both patents.

Plaintiffs claim that Defendants knowingly misappropriated key distinguishing features of Bowlercade to make the Majik Bowl game ("Majik Bowl"), a nearly identical bowling game. Accordingly, Plaintiffs assert claims for infringment of the '187 and '067 Patents. In addition to infringing upon Plaintiffs' patents, Plaintiffs also allege that Defendants "interfered with the relationship between [a] specific retailer and Moose Mountain, and agreed to manufacture and supply retailers, including the specific retailer, with the Majik Bowl game, at a price that would undercut the price of [Bowlercade]." Compl. ¶¶ 47-49. Accordingly, Plaintiffs also bring claims for Tortious Interference with Prospective Economic Advantage, Unfair Competition in Violation of N.J.S.A. §§ 56:4-1 et seq., Common Law Unfair Competition and Unjust Enrichment.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed. To succeed on such a motion, the moving party must show that "no material issue of fact remains to be resolved and that [the moving party] is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 538 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988) (internal quotation marks omitted)).

As in a motion to dismiss for failure to state a claim, in deciding a motion for judgment on the pleadings, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Moreover, a court may consider only the complaint, exhibits attached to the complaint, matters of

public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). "In the design patent context, the facts alleged in the Complaint include the patent and the pictures of the infringing products." Cotapaxi Custom Design and Mfg., LLC v. Corporate Edge, Inc., No. 06-5183, 2007 WL 2908265, at *4 (D.N.J. Oct. 1, 2007). The review of these documents is "sufficient for this Court to determine if 'it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would be entitled to relief.'" Id. (quoting Hughes v. Rowe, 449 U.S. 5, 19 (1980)).

### III. DISCUSSION

Patent Infringement Claims

The Court must engage in a two-step analysis to determine whether Defendants have infringed on Plaintiffs' Patents. First, the design patent must be properly construed, as a matter of law. Cotapaxi, 2007 WL 2908265, at *3. "Second, the patented design must be compared to the alleged infringing product in order to determine whether or not it infringes the design patent." Id. Specifically, the Court must apply the ordinary observer test to determine "whether an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1295 (Fed. Cir. 2010) (noting that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed" (citation and internal quotation marks omitted)). This is a question of fact that the patentee must establish. Id.

A. Claim Construction

The '187 and '067 Patents are each titled "Bowling Claim". Schoenberg Decl., Ex. A and B.

The only claim for each Patent recites: "The ornamental design for the bowling game, as shown and described." Id. There are six drawings showing the different views of the each Patent. On each respective Patent, the drawings show, a perspective view (figure 1), right side elevational view (figure 2), left side elevational view (figure 3), rear elevational view (figure 4), front elevational view (figure 5), and top plan view (figure 6). Id. "Where a design [patent] contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." Richardson, 597 F.3d at 1293 (citation and internal quotation marks omitted). This is so because "[a] design patent only protects the novel, ornamental features of the patented design." See Oddzon Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997). Accordingly, each of the Patents will be reviewed and the Court will distinguish the functional elements from those that are ornamental.

The functional aspects of the '187 Patent are the alley apron, the alley side rails, the sleeves, the pins, and the enclosure. These components are common to many other bowling games that existed prior to the issuance of the '187 and '067Patents. See Cotapaxi, 2007 WL 2908265, at *4; Defs.' Br. 12. The alley apron covers the floor so that the game can be played on any floor surface. In conjunction with the side rails, the alley apron defines the alley down which the plastic bowling ball is thrown. The side rails hold the alley apron flat to minimize creases and to keep the ball from rolling off the alley apron. The sleeves, which lie along the sides of the alley apron, receive the alley side rails. The pins serve the functional purpose that is the object of the game – they are meant to be knocked down. Finally, the enclosure – a rectangular box with a missing side, which serves as an opening – at the end of the alley keeps the ball from rolling or bouncing away after hitting the pins. Once the functional elements above have been properly discounted, the remaining ornamental features are: (1) the rectangular shape of the enclosure (2) the rounded alley side rails; and (3) the intermittent

spacing of the sleeves of the alley apron within which the rounded alley side rails are received.

The '067 Patent is nearly identical to the '187 Patent except that it includes a ball return track and a game controller or console at the end of the ball return. The ball track return functions to direct the ball back toward the player. The track is simply a third rail that extends parallel to the right alley side rail. The rectangular game console serves as a ball stop, keeps score, and allows players to release the pins when switching between players. The positioning of the game console is also functional because it stops the ball and is positioned at the end fo the alley where players may have easy access to it. Once these functional elements are discounted, the remaining ornamental features are: (1) the rectangular shape of the enclosure (2) the rounded alley side rails; and (3) the intermittent spacing of the sleeves of the alley apron within which the rounded alley side rails are received; and (4) the particular rectangular shape of the game console.

B. Ordinary Observer Test

After visually comparing the drawings of the '067 and '187 Patents, Schoenberg Decl., Ex. A and B, to the photographs of Majik Bowl, Defs.' Br. 13-21, this Court concludes that there are no material issues of fact or allegations in the pleadings that could lead this Court to find for Plaintiffs. Under the ordinary observer test, the Patents are not substantially similar to Majik Bowl. As such, an ordinary observer would not be induced to mistake one for the other. See Goham Co. v. White, 81 U.S. 511, 528 (1871).

Though there are certainly similarities between Majik Bowl and the Patents, as there must be between all toy bowling ball games, they are trumped by the ornamental differences. Majik Bowl has a distinct triangular enclosure. On top of the enclosure rests a cartoon-like sign advertising the name of the game and displaying a bowling ball knocking into pins. The sides of the enclosure include

similar pictures of a bowling ball and pins.  Unlike in the Patents, Majik Bowl has a netting behind the pins which is for catching the pins when they fall.  This net extends the back of the enclosure such that when images of Majik Bowl are compared to figures 4 and 5 of the '187 Patent and figure 3 of the '067 Patent, it is clear that the profile of Majik Bowl is different from the design in the Patents.  The alley side rails in Majik Bowl are triangular and attached with Velcro to the top of the alley apron, as opposed to in the Patents wherein the side rails are round rails received within sleeves along the sides of the alley apron.  While both Majik Bowl and the '067 Patent have a ball track and console, both of which are functional, Majik Bowl's console is triangular to match its enclosure.

Due to the obvious and noticeable differences in overall appearance between Majik Bowl and the Patents, this Court concludes that Defendants do not infringe on Plaintiffs' Patents under the ordinary observer test.

Non-Patent Claims

A. Tortious Interference with Prospective Economic Advantage

Plaintiffs allege that "Defendants were aware of Moose Mountain's prior relationship and business dealings with the specific retailer and wrongfully interfered with that relationship for their own benefit" and that this conduct was "committed willfully, knowingly, maliciously, and in conscious disregard of Moose Mountain's rights."  Compl. ¶¶ 59, 61.  Defendants argue that the allegations are formulaic and "at most demonstrate that Defendants compete with Moose Mountain, and the unnamed customer obtained the Majik bowling game at a lower price than it would have paid for [Bowlercade]; nothing more, nothing less."  Defs.' Br. 24.  The Court agrees.

To state a claim for tortious interference with prospective economic advantage, Plaintiffs must plead that "it had a reasonable expectation of economic advantage that was lost as a direct result of

defendants' malicious interference, and that it suffered losses thereby." Lamorte Burns & Co., Inc. v. Walters, 167 N.J. 285, 306 (2001) (citing Baldasarre v. Bulter, 132 N.J. 278, 293 (1993)). Malice in this context means "harm . . . inflicted intentionally and without justification or excuse. . . . [t]he relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." Id. at 306. Here, the threadbare allegations give no indication that Defendants did anything beyond offer a retailer that Plaintiffs worked with a better price for a similar product. Plaintiffs do not plead any facts to show that Defendants acted with malice.[2] Simply making the conclusory statement that Defendants acted "maliciously" will not suffice. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Accordingly, the Court finds that Defendants are entitled to judgment on the pleadings for this claim.

B. Unfair Competition

Plaintiffs' claims for both statutory and common law unfair competition also prove unavailing as they are nothing more than a conclusory and formulaic recitation of a cause of action. Accordingly, this Court will also finds that Defendants are entitled to judgment on the pleadings for these claims.

C. Unjust Enrichment

Plaintiffs allege that Defendants "profited from Moose Mountain's ideas, goodwill, and

---

[2] Notably, Plaintiffs do not base their tortious interference, unfair competition, and unjust enrichment claims on Defendants' allegedly patent infringing conduct and proclaim that there is no "interdependence between [Plaintiffs'] claims of patent infringement and their 'nonpatent claims.'". Pl.'s Opp'n Br. 10.

proprietary designs without compensating Moose Mountain" and that "retention of [those benefits] without compensation to Moose Mountain[] would be unjust." Compl. ¶¶ 75-76. Again, Defendants argue that these allegations are conclusory. The Court agrees.

Moreover, Plaintiffs' unjust enrichment claim is incongruous with the present dispute. "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994); see Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007). A plaintiff must also show "that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. Here, Plaintiffs have not alleged, nor can they, that they expected remuneration from a benefit that they conferred upon Defendants because they did not intend to confer any benefit upon Defendants – Defendants allegedly copied Plaintiffs designs, Plaintiffs did not voluntarily share them. See Wiatt v. Winston & Strawn, LLP, No. 10-6608 (JLL), 2011 U.S. Dist. LEXIS 68827, at *42 (D.N.J. June 27, 2011) (dismissing plaintiffs' unjust enrichment claim because they did not allege "that they performed or otherwise conferred a benefit . . . under a quasi-contractual relationship with the expectation of remuneration" but instead "assert[ed] a variety of tort claims for which they clearly did not anticipate or expect remuneration"). Accordingly, judgment on this claim must be entered in favor of Defendants.

## CONCLUSION

For the reasons stated, Defendant's motion for judgment on the pleadings is GRANTED.

                                                S/ Dennis M. Cavanaugh
                                                Dennis M. Cavanaugh, U.S.D.J.

Date:        August   12  , 2011
Orig.:       Clerk
cc:          All Counsel of Record
             Hon. Joseph A. Dickson, U.S.M.J.
             File